Health Board of Illinois is being convened. Good afternoon, please be seated. Okay, this case is Arnold v. Norfolk, Southern Railroad Company, that's case number 4150655. For the appellate, we have Matthew Rundio, and for the appellee, John Duffy. And I know at least one of you have been here before, and I'm going to be a little bit redundant, but Justice Appleton cannot be here for the oral argument today. He's the third member of the panel, he's read the briefs, he will listen to the audio recording and take participation in the ultimate decision that the court renders. Mr. Rundio, you may proceed. Good afternoon, Your Honor, my name is Matthew Rundio, and I represent the estate of Mr. Arnold in this case. This case presents questions of material fact regarding both the conduct of the defendant and the plaintiff that should preclude summary judgment. The trial court in this case, in ruling on the defendant's motion for summary judgment, identified and recognized several questions of material fact regarding the defendant's conduct in this case. Nonetheless, the trial court then ruled, as a matter of law, that the plaintiff's contributory negligence barred this action. The trial court ruled that the plaintiff's conduct was either the sole proximate cause or greater than 50% of the cause of this fatal grade-crossing collision. The trial court's recognition that there were multiple questions of material fact, in and of itself, should have precluded its ruling that Mr. Arnold's conduct was the sole proximate cause or greater than 50% of the cause of this collision. That's important because in recognizing that there were questions of material fact regarding the defendant's conduct, regarding whether this crossing was ultra-hazardous and regarding whether a missing yield sign was a cause of the collision, the trial court took away the opportunity for a jury to hear the evidence and to weigh the evidence. There certainly can be multiple causes for a collision such as this. It could be the plaintiff's fault, it could be the defendant's fault, or it could be a combination of both. In ruling that, as a matter of law, the plaintiff's conduct was the cause of this collision, that prevented the plaintiff from presenting these facts to a jury who would render a decision in this case. I think it's important to note that this case was decided at the summary judgment phase. The parties had conducted a substantial amount of fact discovery in the case. The plaintiff had disclosed numerous Rule 213F3 experts in the case, three of whom are prominently displayed in the briefs before the court. Mr. Burnham, Mr. Lumiere, and Mr. Blackwell. Each of those individuals submitted affidavits, amended affidavits, and sat for depositions, wherein their opinions were not only disclosed but discussed at length. These materials were presented to the trial court in opposition to the defendant's motion for summary judgment. And as I'm sure the court is aware, summary judgment is a drastic remedy. It should only be granted when there are no questions of material fact. The movement must be entitled to judgment as a matter of law in a free and clear manner, and that is certainly not the situation here. In ruling on a motion for summary judgment, the trial court should determine whether there are triable issues of fact. And clearly, based upon the record before this court, plaintiff's unrebutted expert testimony and opinions and evidence, there are questions of material fact that should preclude summary judgment. The question is not whether the plaintiff would prevail at trial, but whether there are triable questions of fact. And clearly, there are. Turning now to the question of whether the crossing was ultra-hazardous. It's well settled in Illinois that railroads have a duty to provide adequate warning devices at their crossings. They need to provide a warning to the motorist that a train is approaching. If there are special circumstances, meaning the crossing is ultra-hazardous, they have a higher duty of care. They have to provide additional warnings. And this is discussed at length in the briefs. What constitutes an ultra-hazardous crossing is largely a question of fact. I don't believe there is any case cited by either party where the court rules as a matter of law a crossing is or is not a ultra-hazardous crossing that required additional protection devices. Moreover, when there is any evidence that a crossing is ultra-hazardous, that is a triable question of fact for the jury. That is important in this case because the one fact that the trial court relied upon in ruling that Mr. Arnold's conduct precluded this action was that he had an unobstructed view down the railroad tracks of the approaching train. If the jury were to decide that the crossing was ultra-hazardous, the only evidence in the record before this court by Mr. Burnham and Mr. Lumita is that the crossing required automatic gates and flashing lights. Those would have provided an active warning for Mr. Arnold that a train was approaching. And his view to the left or to the right is inconsequential. So the fact that the trial court relied upon the fact that Mr. Arnold had an unobstructed view becomes inconsequential if the jury in this case were to decide either question of fact in favor of the plaintiff. And that's what I was talking about just a minute ago and it's borne out in some of the cases that are cited by the plaintiff that the jury is entitled to weigh the conduct of the parties. The jury is entitled to hear what the defendant's alleged negligence was. As the court recognized, there are questions of fact regarding that. And hear what the plaintiff's conduct was. And in the allegations against the defense that the crossing was ultra-hazardous and should have been equipped with gates and lights. And the fact that a missing yield sign was a cause of the collision go right to the heart of the trial court's ruling that Mr. Arnold's conduct was the cause of the collision. Mr. Ruggiero, can I ask a question? Here, just bookmark where you're at in your argument and you can get back to it. But had the trial court not made the comment in its order that basically it found a question of fact as to the ultra-hazardous nature of the crossing. Had it not made that comment or finding, however you want to characterize it, how would your argument on appeal be different? Assuming the trial court made the same sole proximate cause finding that it made. Well, I believe my argument would be substantially the same. If we look at the cases regarding contributory negligence, which is largely a question of fact for the jury, it only becomes a question of law when the undisputed facts and evidence indicate that all reasonable juries would return a verdict in favor or against the plaintiff. And that's not the case here. One of the things that the courts look at in ruling on contributory negligence claims is whether the undisputed facts, it's a very high burden. There are cases that the plaintiff cites where an intoxicated individual lays down on the tracks. And the appellate court found that there's a question of fact about whether the railroad could have avoided that by the train crew keeping a proper lookout. There's cases that we've cited, I believe, Lindquist, where a driver drives around down working, functioning gates. There's no case that's cited by the parties here, and I don't believe there's any case that holds, where there are questions of the defendant satisfying its duty to the plaintiff, and questions about the plaintiff's conduct, that that is resolved as a matter of law. In the cases that the plaintiff cites regarding contributory negligence being a question of fact for the jury, even where the plaintiff may be partially at fault, such as Ackerberg and Lindquist, Espinosa and Alexander, there are inherent questions regarding whether the defendant satisfied its duties. There are some cases where contributory negligence is resolved as a matter of law. In each of those cases, Hamilton, Sheehan, and Reales, there was no question, and the court goes out of its way to indicate that there's no question that the defendant satisfied their duties, that the gates and lights were working at the crossing, that the train sounded its horn, that it was driving at appropriate speed, that it was sounding its, I'm sorry, that the ditch lights as well as the headlight were working. So I suppose if the trial court did not make that ruling, my argument would be substantially similar, and I believe the record before the court, the unrebutted testimony and evidence from Mr. Burnham and Mr. Lumiere, that the crossing was ultra-hazardous, creates a question of fact, that the court appropriate rule in that regard. Did the trial court, excuse me, I was just looking through the railroad's appendix to its brief. I was looking to see, looking for the summary judgment motion. Did the railroad move for summary judgment based on sole proximate cause? The railroad ruled for summary judgment that the plane misconduct was the primary cause of the collision. All right, so it wasn't that the trial court went beyond the summary judgment issues that were presented in finding sole proximate cause, but it made an incidental finding that there was a question of fact, as the ultra-hazardous nature of the crossing, but even so, it was going to find sole proximate cause or at least greater than 50% contributory negligence on the part of the deceit. Well, it made that ruling. I don't believe that's an inconsequential finding in light of all the totality of the evidence here. The case law is clear that whether a crossing is ultra-hazardous is a question of fact for the jury. If there's any evidence cited in the Baker case, that question goes to the jury. So I don't believe that's an inconsequential finding at all in light of the record in this case, which is that the crossing was ultra-hazardous pursuant to the factors that Illinois courts recognize in the Baker, Bassett, and there are three B's here, excuse me for a minute, Brennan case. In addition, the experts the plaintiff has provided rely upon federal standards and regulations. The Federal Highway Administration's Railroad Highway Crossing Handbook, the Model of Manual and Uniform Traffic Control Devices, which is a widespread publication in the field of traffic engineering, and the ASH domain. So it's a combination of factors that are provided here, and I don't believe in any respect that that finding is inconsequential, especially in light of the case law and the specific opinions and evidence that the plaintiff has fronted here and provided to the court. Now certainly the railroad takes issue with the trial court's finding in that regard, and suggests that it was entitled to summary judgment on the issue of whether or not the crossing was ultra-hazardous. Railroad identifies the plaintiff's expert's opinions based on information that was not relevant to the determination as to whether or not the crossing was ultra-hazardous at the time of the accident. The experts took into account potentially that there were agricultural crops that were grown in the vicinity of the crossing and that that went into their determination as to ultra-hazardous. What's your response to the timing of the determination as to ultra-hazardous? Sure, I have several responses. The first one is that if the railroad, I don't believe that issue is properly before the court, if the railroad was going to appeal, or if the railroad was going to contest the trial court's finding about whether the crossing was ultra-hazardous as a matter of law, that's something that should have been presented in the cross appeal. Nonetheless, going on to the heart of the argument there, the trial court and to a certain extent the railroad in their briefs have singled out Mr. Burnham's opinions regarding the time that he evaluated the crossing. We look at Mr. Burnham's affidavit, his amended affidavit, and his report. His conclusion is that on February 2, 2009, this crossing was ultra-hazardous. He does say specifically that he looked at the crossing as it would affect any motorist at any time, including Mr. Arnold, and that he considered all conditions that are existing there which could be applicable to this man's travel on that date. And what I believe the trial court and the defendants are doing is they're confusing crossing conditions with crash conditions. The crossing conditions are the factors that the Illinois court set out, as well as are set out in standards and treatises that the plaintiff's experts rely upon. Those are fixed physical features at the crossing. The width of the roadway, the width of the crossing, the volume and speed of vehicular traffic, the volume and speed of train traffic, physical findings there. So yes, the crossing is ultra-hazardous in general. It's ultra-hazardous for Mr. Arnold on February 2, 2009. It would have been ultra-hazardous for other motorists who crossed it that day and the days before. So Mr. Burnham's opinions are based upon the physical features that existed there predating Mr. Arnold's incident. So I believe those opinions are relevant, plus his findings are consistent with Illinois law that holds you to take a look at the crossing as it existed on the date of the incident. Well, could an expert make an ultra-hazardous determination based on the growth of bushes and trees in the year prior to the accident and say at that time it was ultra-hazardous, therefore there should have been additional enhanced crossing protection at that time, and be able to use that ultra-hazardous determination to say, you know, an accident that occurs at that crossing six months later would not have happened had this enhanced crossing protection been in place. And I agree that that is one of the factors that Mr. Burnham cites, among many others. And my response is this. The Illinois courts, the Brennan, the Bassett, the Baker case hold that you look to the surrounding character, the neighborhood around the crossing. In this case, you know, whether it's residential, whether it's commercial, whether it's cropland. So yeah, the three of the four quadrants did have crop, including corn crop, that can grow to a great length. So nobody's suggesting that there were corn plants or corn crop on the day of the collision, but when looking at one of those factors, which is the character of the surrounding area, it should come into the consideration. Maybe not directly, but certainly indirectly, because as Mr. Burnham says in his deposition, you want to evaluate the crossing under the most stringent circumstances, so that it's safe under all circumstances that are less stringent. So to a certain extent, I believe that can come into play based upon the nature of the area surrounding the crossing. I'm not suggesting it, nor is anybody for the plaintiff, that there were any crops that may have obstructed Mr. Arnold's view in the quadrant at issue on the day of the collision. So I do believe that it is a factor, maybe not as direct of a factor as some of the other ones, the numerous other factors that are cited by Mr. Lumier and Mr. Burnham. I'd like to maybe change gears here for a minute to an argument that I believe the trial court may be misapprehended or certainly glossed over in its opinion, and that's the question of the missing yield sign. It is not disputed that there was by law supposed to be a yield sign posted on the cross buck sign for traffic traveling in Mr. Arnold's direction. That's very important in this case because it's undisputed that Norfolk Southern had two qualified track inspectors out at the very crossing where this collision took place mere hours before the collision who were obligated by Norfolk Southern written policy as well as the standard of care to check for signage at the crossing, to check for roadway signs that were supposed to be posted to the cross buck. Both track inspectors knew that there were required to be yield signs there. They knew that they had to inspect the signage. And there's no notation and neither of them remembered noting that the sign was missing. So it's the plaintiff's contention that the sign was missing at the time. And that's important because that triggers certain duties and responsibilities of these track inspectors. They were required by the policy as well as standard of care to take immediate corrective action. And I know that it's well documented in the briefs, but they were required to call the bridges and building department and report that the sign was missing. They were required to call the dispatch department, the train dispatch, and ask for a slow order, a stop order, or a reduced speed order. They could have also served as flagmen and physically used flags from their truck and waved down any vehicular traffic until the sign was replaced. Mr. Stanfield said that he had done these things before when confronted with missing or down signs. And any one of these four things, or all four of them together, would have undoubtedly avoided this collision because the train would not have arrived at the crossing at the same point in time. And I recognize that the defendant cites cases that says an inherent part of a collision happening is that the two vehicles or the two parties come together at a certain time and they look at the Hayes case where there's allegations about slight adjustments to the speed of a train 12 minutes and I think 38 minutes before a crossing. That's not the case here. I'm talking about a localized hazard at a specific crossing where a train would have had to either slow down or stop at this particular crossing. And that is how the failure of these track inspectors to identify that the sign was down was a cause of Mr. Arnold's collision. So if we look at that claim of the plaintiff that the track inspectors were negligent and didn't do their jobs and we look at the ultra-hazardous claim, either one of those claims, if the jury decides for the plaintiff, would have avoided the collision. It would have mooted what Mr. Arnold could have seen down the tracks. And that's the only fact that the trial court relies upon in ruling that his conduct was, like I said, the sole proximate cause or greater than 50%. The railroad makes a point of differentiating between cause and fact and legal cause here. Can you address legal causation and foreseeability? Sure. It's definitely foreseeable and reasonably foreseeable that if a sign, a traffic control device at the crossing, one of the few, this is a passive crossing, there were not automatic gates and lights at the crossing. So if a sign that's required to be there by law that the unrebutted testimony of Mr. Burnham is more easily recognizable and triggers driver action more so than a simple crosswalk sign is missing, it's reasonably foreseeable that a motorist may not yield and may not stop at the crossing. If there's a direct correlation, the sign's there for a reason. The sign's there to warn motorists. Mr. Arnold was entitled to that sign being there. He was entitled to that warning, and he didn't get it. And that's how it's reasonably foreseeable that if the sign wasn't there, Mr. Arnold may not have yielded. But more importantly, if there was a slow order, a stop order, or a speed restriction, it's simple fact that the train doesn't arrive going 59 miles per hour at the same time Mr. Arnold's vehicle arrives. If there's a flagman there, Mr. Arnold stops. He's physically flagged down by the gentleman waving his flags, saying, Stop, there's a train coming. After the train comes, Mr. Arnold could have proceeded over the crossing. So there's an active component to the claim, which would be the ultra-hazardous nature of the crossing that required gates and lights. There's also a component that the train would have had a local restriction in speed within a reasonable, maybe within the whistle post or within a third of a mile before this, where it would have reduced its speed. Or in a stop and flag, the train physically stops before the nose of the locomotive enters the crossing. The conductor physically gets out, serves as a flagman to flag down any traffic while the train goes through the crossing at a walking pace. Once the nose of the locomotive exits the crossing, the conductor gets back on and the train proceeds. So I believe there definitely is a reasonable argument here that the failure to do those things was a legal cause of Mr. Arnold's collision. Counsel, you're out of time, but you'll have rebuttal. Thank you very much. Mr. Duffy? Thank you, Your Honor. May it please the Court, Mr. Rondeau, my name is John Duffy. I represent Norfolk Southern and its two-train crew and Mr. Soldi and Mr. Schuller in this Ray Crossing accident case. I want to make just a couple of brief responses to about the last two things Mr. Rondeau said and then turn to a subject he didn't mention at all. First, it was hotly contested as to when the yield sign went missing, and Judge DeArmond made a very specific finding on that in his order and said, it's unknown, which is exactly what the plaintiff said in response to our discovery to them. It's unknown. There's no proof at all that the Norfolk Southern track inspectors, when they did inspect that line of road earlier that day, noticed missing yield signs. No such proof. There is no proof of notice against Norfolk Southern on that point. The proximate cause issue is a very important one, and we cite a number of cases from this State and others that quickly dispose of the argument, well, if you'd only done this or that, the two participants wouldn't have met at the same point in time. That's not proximate cause. That's very fundamental. They did have a lot of experts. We did depose all of them, thankfully so, because we were able to establish that what they had to say didn't amount to very much at all. Their opinions were thoroughly contaminated by improper evidence, which Judge DeArmond noted. Serial holdings leading up to the summary judgment motion foreclosed their efforts, if it wasn't successful, to use information that's specifically prohibited from use by a federal immunity or privilege statute, 23 U.S.C. 409. We discuss all this in our brief at some length. They also, even though they say they didn't, they did, used factors other than the factors present at the time of the accident. Illinois law is clear that on the issue of an extra-hazardous crossing or not, ultra-hazardous, extra-hazardous, courts use both terms. The question is, was it ultra-hazardous at the time of the particular accident? That's what the courts say. The case that comes to mind most prominently is the Merchants National Bank of Aurora case, a fairly recent decision that emphasizes that. One of the older cases that Mr. Rundio mentioned, Bassett, says effectively the same thing. Not only is it irrelevant, and Judge DeArmond noted this in his order too, you can't rely on the fact that corn might be eight feet tall the year before, or that hazardous nitro, this is a farming area, nitro or nitrogen tanks or application equipment might be driving up and down the road. Not relevant to the question. The question is, at the time that Mr. Arnold, in this case, approached this crossing, was the crossing extra-hazardous? In this case, we have something that's quite unique, and I'll just mention it and then turn to what I intended to start with before. That is, we have a video of the whole event, and I'm hopeful that the court was able to access that. I struggle with it, so good, I'm glad, because you can see exactly what happened in this flatter-than-flat part of Vermillion County. Let me turn to where I intended to start, and that is the estoppel issue. The sole basis for Judge DeArmond's decision was that the fault of Mr. Arnold, Swampt, was greater than the fault of all the other parties, and he granted summary judgment on that overwhelming fault in favor of all of the defendants. Don't forget about Vance Township. They're not here today. Vance Township was a vigorous participant in this litigation, filed their own summary judgment. It was heard on the same day as the railroads, and their motion was granted right along with ours. On the identical issue, the fault of Mr. Arnold, that was the basis for that decision. Because the plaintiff chose not to appeal the trial court's order as regards defendant Vance Township, that order, the July of 15 order, became a final order binding on the parties in this case, plaintiffs and defendants alike. It is the law of this case. It involves an application of, to be precise, I learned something in this case that I'd never thought about. Direct estoppel is the exact term that's used. Most courts still refer to collateral estoppel, but it's really direct estoppel because it's operating within the confines of a single action, a single lawsuit or case. Plaintiff says, well, it's collateral estoppel, and since you're talking about estoppel within the confines of a given case, you can't get there from here. Well, that's exactly wrong. It's exactly the kind of case where direct estoppel, not often applicable, but it sure is here. I'll explain why in just a moment. It is exactly the right doctrine. It has the same three basic elements as collateral estoppel. You have to have an identity of parties, which obviously we do. You have to have an identity of issues, often not the case. But here, it's exactly one issue. Plaintiff says no. Vance Township says yes. Norfolk Southern says yes. The fault of Mr. Arnold's soul or overwhelming bars the action. That was Judge DeArmond's finding. Right or wrong, that's what he found. That's the only basis for his decision. The doctrine also operates and should here, I respectfully submit, to prevent anomalous, incongruous results. Because the plaintiff did not appeal the trial court's order granting the summary judgment in favor of Vance Township again, that order, the one in front of this court, became a final order, and it precludes the plaintiff from challenging the trial court's finding of sole cause or 51% cause. The purpose of direct estoppel, like collateral estoppel, is to avoid relitigating final orders. And as I said, also to prevent incongruous results. As you apply it in this case and think about it, this rule necessarily bars a final judgment, on the one hand, in favor of Vance Township on the issue of Mr. Arnold's overwhelming cause. On the one hand, it says they are inviolate. They cannot be challenged. They're not even here on appeal, of course, on the one hand. And then on the other hand, say, well, Norfolk Southern, you're going back for a trial. And on the very same facts, the exact identical issue, we are going to be re-exposed to a trial when Vance Township is not. That's the incongruity that this doctrine sometimes has to be used to foreclose. Would you be foreclosed from third-parting in Vance Township? Absolutely, because it's exactly the same issue, Your Honor. Mr. Arnold's fault or not, they're resolved. They are home free. I have no explanation for why they aren't here, by the way, but they're not, and the judgment became a final one when the time to bring them here expired. The correct result under this doctrine comes to this Court with some bit of serendipity, I submit. No secret. You saw it in our briefs. We rely heavily and suggest to you that this Court's prior decision in the S. Worthy case ought to be accepted as controlling of the outcome here. S. Worthy was an opinion written by Judge Kinect, and it was a decision that was made by Judge Kinect. And as you may recall, it involved the same railroad. It happened just a couple of miles to the west of where this accident happened in the little town of Homer. It involved a grade-crossing accident. And in that case, the plaintiff sued the railroad. The railroad third-partied, adjoining landowners under a contribution theory, saying, you let your vegetation grow and block the view of motorists, and you ought to share the fault with us. The plaintiff said, that sounds like a good theory. I'll join in. And they, too, brought direct claims against the third-party defendants, and the matter went before the Court on a motion to dismiss for failing to state a claim. And the trial court in that case said, no cause of action, no duty on the part of adjoining landowners to make the view good for people approaching railroad tracks. You lose. Now, what happened there is what's really important here. In that case, Norfolk Southern initiated an appeal. The plaintiff did not, and no one joined the plaintiff to the appeal, even though they were directly covered by the very same order that Norfolk Southern was appealing. There was an identity of issues, an exact identity of issues, and that is whether the adjoining landowners owed a duty or not, whether Norfolk Southern could pursue a contribution claim, whether the plaintiff could pursue a direct claim. It's all one case, direct estoppel, even though all due respect to Judge Kinect, he said, use the word collateral estoppel. It doesn't matter. As I said, in Norfolk Southern appeal that came to this court, Judge Kinect held that the failure of the Norfolk Southern, the defendant, to appeal, affect the appeal of the plaintiff, to join them in the appeal, barred, resulted in the claim being barred. The key, key aspect or piece of his analysis, I'll read it. It's short. Judge Kinect said, even though plaintiff did not appeal the dismissal of her complaint against the adjoining landowners, the defendant, Norfolk and Western, could have done so and had to, and had to, in order to preserve the issue for further consideration. That was the nub of his holding that applies precisely, precisely to this case. We have the plaintiff suing Vance Township and Norfolk Southern, same identical issue presented to the court, same exact result. It comes here. Where's Vance Township? Well, they have a final, binding, non-appealable judgment is where they are, and that is just as binding as to my clients as it is to the plaintiff. And no one in this case can challenge the conclusion of Judge DeArmond that the plaintiff was the sole or 51% cause of the whole accident. Stated in even more simple terms, you can't have two different final judgments on the same issue, same parties, same case, same facts. It's legally impossible. And that's exactly what would happen here if this court reversed Judge DeArmond's opinion and sent it back to the trial court for Norfolk Southern to go to a jury trial on a matter that's already been decided. Exactly the same issues have already been decided. We cite some other cases, another one from this district, the Hinkle case, which slightly different facts but essentially the same result, an application of direct estoppel. If the issue for trial is whether the light is red or green, and the court directs a verdict and says it was green, it doesn't then say, well, I'm going to let the other defendant, I'm going to let this case go ahead and go to the jury and let them decide the same question. Kind of a simple, perhaps silly example, but that's really what we're talking about here. On the rest of the case, having said all of that, and in my remaining time, let me respond to several of the points Mr. Rundio made about the whole issue of extra hazardous crossings and the like. They were not unrebutted. We certainly challenged their summary judgment proof very vigorously, and I've already mentioned the fact that there is simply no evidence, it's a zero for both sides on the stop sign, on the missing yield sign. There's no proof as to when it went missing, whether it was 15 minutes before the accident or 15 days before the accident or 15 months before the accident. Not for want of trying, but there's no evidence on that point. That's just the way it is. Illinois law acknowledges that crossbar signs, which were present, are yield signs. So instead of having two yield signs, we had no dispute about this, at the moment of the accident, one yield sign. The investigating police officers discovered right after the accident that there wasn't a yield sign for Mr. Arnold's approach. There was the crossbar sign. The trial court's conclusion, it's holding that plaintiff's decedent was more than 50% at fault in causing the accident, is not dependent, logically or legally, not dependent upon negating or ruling out Judge DeArmond's discussion of extra hazardous crossings. The same result can obtain regardless of whether the plaintiff is pursuing an extra hazardous crossing claim and regardless of whether Judge DeArmond did, in fact, at times say, well, I'll put it over here in my question of fact file on the extra hazardous crossing claim. And then at the end he says, but having done all that, I'm confident that I'm making the right choice here.  The counsel of Mr. Grundio made the statement that an unobstructed view would be inconsequential if the jury decided the crossing was ultra hazardous. What you just said would seem to contradict that, right? And if so, why? Well, the view was indeed more unobstructed than you can imagine in trying to think of the best example of an unobstructed view at an intersection. And I do think that's a very important fact, and maybe I'm misunderstanding, Your Honor, but Mr. Grundio's theory, which we addressed in our brief, that it would be moot, I think he says, if it doesn't matter that it's a clear view, doesn't matter that it's the train sound of his horn, because there really ought to be flashers and gates there, and so it doesn't matter. Well, I don't know where that comes from in Illinois law, but I couldn't find it. I don't know of any law that says that. He also said, it's the clearest of broth soups argument in a case like this, but he said plaintiff should be excused because he may have been looking or thinking about anything but an approaching train. Well, with all due respect to Mr. Arnold, first, no one knows what he was thinking, and everybody acknowledges that, but that's not his duty. His duty upon approach to an intersection like this is to pay attention, written Illinois statutory law, stop and yield under certain very specifically prescribed circumstances that we discuss in our brief. Train approaching amidst a horn. It doesn't say, and he heard it. That's his job, to hear it. In plain view and in hazardous proximity of the crossing. I'm sure the court has looked at some of the photographs that we've appended to our papers, and again, this is the flattest of flattest places in America, maybe, or one of them. I mean, I'm not trying to exaggerate, but it's very flat. From 300 to 500 feet, you can see 1,500 feet down the way. It's just wide open. And, yes, there are cases where the evidence is overwhelming. That's the word used in this state's directed verdict standard, where there are no genuine issues of fact. Yes, you can always come up with some issues of fact, I suppose, in just about anything in the world, but genuine issues of fact, that's what counts. The Thiel case, Indiana case, from many years ago, it seems like, involved some similar issues, and I wanted to briefly highlight those. Thiel, it was an accident that happened in Indiana. It was a federal district court case up near Fort Wayne. Mr. Thiel got struck by a train and injured, and the trial court judge, and in that case, one of the theories against the railroad was, well, the crossing's extra hazardous. You should have had flashers and gates. Back at that time, one of the arguments that was made in opposition to that argument was, well, that's preempted by federal law, and the district judge agreed in that Thiel case, and then he went on to hold, kind of like Judge DeArmond. Setting all that aside, the fault here is just clear cut, and I'm going to enter judgment under Indiana's comparative fault statute, which has the exact same modified fault, 51 percent provision. It went up to the Seventh Circuit, and what's important about the Seventh Circuit piece of this is this. The Seventh Circuit said, well, Judge Lee, we don't agree with you on the preemption part. We're going to let stand the extra hazardous crossing claim. It's in the case, part of the case, but we agree with you that the fault was overwhelming and should bar the claim, notwithstanding the existence that we just held was viable by itself. The extra hazardous crossing claim. So I think it's a really important decision on that issue that the plaintiff really emphasizes in their brief, which is you simply cannot have both an extra hazardous crossing claim where the trial judge says, yes, there's some sort of an issue of fact, and at the same time, reach the conclusion that Judge DeArmond did in fact reach. Our response to that is, yes, indeed, you can, and it really does depend on whether the facts are overwhelmingly in favor of that proposition, like they are here, or whether there are really any genuine issues of material fact. Judge DeArmond wrote about a half a dozen orders in the history of this case, striking out their attempt to use impermissible evidence, which their experts went ahead and used anyway in their reports that were submitted in opposition to the summary judgment motion. That's the point we made of all of that. And they also talked about all kinds of factors, physical factors, that weren't present on the day of Mr. Arnold's accident that don't count either. So as we say in our brief, we submit that their summary judgment opposition was thoroughly contaminated by inadmissible evidence. All that said, I appreciate your paying attention, and appreciate having the opportunity to come to this state and argue a case. I really do. I'm getting older, so thank you. And we would ask that the trial court's decision be affirmed. Thank you, Mr. Duffy. Is there any rebuttal? Yes, there is. Okay, thank you. I'll first start with some of the arguments Mr. Duffy ended with about the Thiel case and about proximate cause. And that's a really critical issue in this case because the court ruled as a matter of law that the plaintiff's conduct was the sole proximate cause or greater than 50%. What the plaintiff's arguments about ultra-hazardous and the track inspection go to is also proximate cause. And that's why it's so important that this case be heard by a jury who can weigh the conduct of each party and provide a decision based upon the conduct and what the evidence shows. Counsel cited the Thiel case. Completely different factual situation. In Thiel, the plaintiff violated a stop sign, stopped on the tracks, and his vehicle was found in park. So the court, I believe, made its ruling appropriately based upon those facts. But that also goes to the heart of this issue about ultra-hazardousness. It's done on a case-by-case basis, a fact-by-fact basis. So the Thiel case really has no application here. It's completely factually distinguishable because we know Mr. Arnold wasn't on the crossing. We know he wasn't stopped there in the park. He didn't violate the yield sign because it wasn't there. And when we look at what the common element in all of these claims, these legal claims is, it goes to cause. What caused the collision? In the jury, as traditionally the case, proximate cause is a question of fact for the jury. The jury should hear the evidence of negligence against the defendant that the crossing was ultra-hazardous, against the defendant that it's track inspectors that were there hours before this. If the question is legal cause, however, does that necessarily go to the jury? The foreseeability should go ahead. It's foreseeable that if there was gates and lights at the crossing, as one of your honors mentioned just a minute ago. Well, foreseeability is a large measure of duty, and that doesn't go to the jury. What's the difference between foreseeability regarding legal cause and foreseeability as to duty? Well, for example, if I can answer your question in the context of automatic gates and lights. So it's foreseeable that a motorist is going to respond and stop when there are automatic gates and lights that are activated. There are a lot of cases that are cited in the briefs by both sides where motorists don't. And I think the courts largely rule when they do make a determination that contributory negligence was the cause. They rule because it wasn't foreseeable. The railroad complied with all of its duties. It had the gates and lights. They were working. The train crew did what they were supposed to do. It was the motorist who didn't. And maybe that is a question of law. But here it's foreseeable if there were gates and lights that Mr. Arnold would stop. Isn't the question under legal cause, though, whether it was foreseeable that plaintiff would have pulled out in front of an oncoming train going about 60 miles an hour in the presence of crosswalks? And a clear view with an unobstructed view. That is foreseeable. I mean, there are plenty of great crossing collisions. That's why the railroads have signs. That's why they should have had a yield sign here. And there are collisions out there that make it a foreseeable event that people may disregard signs or may disregard a crosswalk sign. But in this case, what made it foreseeable to the railroad that he would proceed onto the crossing in light of all of the things Justice Turner just asked? Well, I think there are a couple of things. The first one is that the track inspectors who were out there that day had the obligation to take corrective action. And it's foreseeable if they don't recognize that a sign that's required to be there is missing. It warns a motorist it's not there, that it's foreseeable that there could be a collision. But the yield sign that was missing is the functional equivalent of the crosswalk, right? The legal equivalent.  It did. Is that right? It did. So proceed then with the foreseeability analysis. Sure. As Mr. Burnham said in O'Kine, that a yield sign is more recognizable by the motoring public and is more identifiable as requiring some kind of driver action. So it's the identifiability of the sign. But really, whether the yield sign is there or not, the heart of the issue is that there should have been a track inspector there flagging people down. There should have been a slow order. There should have been a stop order or a speed restriction. When this yield sign should have been detected, corrective action was required. And that would have mooted any of these other issues. That's why the causation element here, was the railroad's conduct a cause of this collision, is so important. It's so important that it's determined by a jury. And a jury should be able to weigh the conduct and weigh the causation arguments as opined to by the plaintiff's experts as well as the railroad's experts at some point. Or their people in this case. I see that my time is up. Thank you very much for your consideration. Thanks to both of you. The case is submitted and the court will stand in recess.